FILED'08 JUN 11 12:46USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIANE T. DAWES,                                                CV 07-6221- AA
                                                               OPINION AND ORDER
                    Plaintiff,

          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.


AIKEN, Judge:

## INTRODUCTION

Plaintiff Diane T. Dawes brings this action pursuant to the Social Security Act, 42 USC §

405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her claim for Disability Insurance benefits. For the

reasons set forth below, the decision of the Commissioner is reversed.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits on February 18, 2003 alleging disability since October 26, 2002, due to spinal stenosis, fibromyalgia or chronic pain syndrome, bilateral hearing loss, depressive disorder, personality disorder, and posttraumatic stress disorder. Her application was denied initially and upon reconsideration. On February 9, 2005, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated July 29, 2005, the ALJ found plaintiff was not entitled to benefits. The Appeals Council granted plaintiff's request for review, and adopted the ALJ's finding that plaintiff was not disabled, but modified the ALJ's assessment of her residual functional capacity. Tr. 12-18.[1] Plaintiff now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

2 - OPINION AND ORDER

USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53

F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The

Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than

one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## **ALJ's DECISION**

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since

the alleged onset of disability. This finding is not in dispute.

At step two, the ALJ found plaintiff had medically determinable severe impairments

including chronic pain syndrome, bilateral mild to moderate symmetric sensorinerual decrease in

hearing high frequencies, depressive, personality and posttraumatic stress disorders, and episodic

marijuana dependence. This finding is not in dispute.

At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a

listed impairment. This finding is not in dispute.

The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to

perform a reduced range of light exertional level work. Plaintiff is limited to simple tasks and

instructions, she cannot be exposed to acute audible ranges, she is limited in her ability to drive

motor vehicles, and her manual dexterity is mildly limited. The Appeals Council modified this

finding to restrict plaintiff to sedentary work reduced by the non-exertional limitations.

At step four, the ALJ found that plaintiff was unable to return to her past work. This finding is not in dispute.

At step five, the ALJ determined that plaintiff retained the ability to perform a limited range of light work. The Appeals Council modified the ALJ's RFC finding, and concluded that plaintiff retained the ability to perform a reduced range of sedentary work. As a result, the ALJ and the Appeals Council found plaintiff not disabled within the meaning of the Act.

## FACTUAL BACKGROUND

Plaintiff was born in 1958, and was 47 years old at the time of the hearing. She has an Associate Degree in science and has worked as a social services aide and a program aide. Tr. 937, 949.

The medical records in this case accurately set out plaintiff's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) finding her not fully credible; (2) improperly rejecting the opinions of treating physicians; (3) improperly rejecting the opinions of examining psychologists and (4) failing to find severe impairments of cognition, fibromyalgia, degenerative disk disease, spinal cord compression, diabetes, and seizures. Because the first two assertions are dispositive, the court need not address the latter.

/ / /

/ / /

I. Plaintiff's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick*, 157 F.3d at 724. *See also Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan*, 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms [footnote omitted.] *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based
> on subjective symptoms "must produce objective medical evi-
> dence of an underlying impairment which could reasonably
> be expected to produce the pain or other symptoms alleged...."
> *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988));
> *Cotton*, 799 F.2d at 1407-08. The *Cotton* test imposes only two
> requirements on the claimant: (l) she must produce objective

medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom. *Smolen*, 80 F.3d at 1282 (italics in original).

To determine whether Plaintiff's testimony is credible the ALJ may consider, for example: (l) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen,* 80 F.3d at 1284.

Plaintiff contends that her fibromyalgia became worse after a June 1999 motor vehicle accident. In February 2005, plaintiff testified that she seldom socializes. Tr. 970.  Her son comes to her house daily and helps her with grocery shopping, laundry, driving, and balancing her checkbook. Tr. 974-5.  Plaintiff testified that she is in constant pain, and that she gets pain "all over." Tr. 953.   The pain lasts "[s]ometimes for days, even weeks." *Id.* She has problems with fatigue and mental difficulties.  Three or four times a month, her pain is so bad that it will "take my breath away, cause me to cry, double over, not having the ability to hold something." Tr. 954. The pain can last for days.  She gets pain in her "head and every other part of my body, my spine, finger, anything that has to do with bones, cartilage." *Id.*  Her pain is exacerbated by stress, weather changes, diet, and lack of sleep. Tr. 955.  Her fatigue is made worse by stress, exercise, and driving. Tr. 956.  She can walk for about 20 minutes before she gets tired.  She cannot drive if she is too tired or has a headache.  About ten days a month, her fatigue will become so great that she has to lie down for 20 to 30 minutes. Tr. 958.  Plaintiff can stand for about 20 minutes before she tires. Tr. 970-71.  She can only sit for 15 to 20 minutes before she

6 - OPINION AND ORDER

gets restless. Tr. 971. When she has a headache she has to make her room quiet and dark, and lie still until it goes away. Tr. 962. She has headaches four or five times per week. Tr. 963.

Plaintiff testified that she has a panic disorder, and that she has panic attacks "[p]retty much every day." Tr. 971. Panic attacks can be triggered by riding in a car, the presence of a crowd of people, and confrontation. *Id.* The attacks occur as often as three times a day, and last a few seconds. Tr. 972. After an attack plaintiff is "[e]xtremely tired." *Id.* It takes 15 to 20 minutes for her to recover from a panic attack.

Plaintiff testified that her medications cause the side-effects of dry mouth, sleepiness, and confusion. Tr. 974.

The ALJ considered the plaintiff's alleged disabling symptoms and her allegations regarding her ability to work, but found the plaintiff's statements entitled to little weight due to a lack of objective medical evidence supporting the claims and inconsistencies in her statements. Tr. 33. The ALJ noted that plaintiff's symptoms were inconsistent with her reports to care providers that she was an advocate for the elderly and disabled (February 2003), a full-time homemaker (February 2002), and that she exercised regularly by walking as much as one and one-half miles or stepping on a stair machine (September 2002). The ALJ cited chart notes in which plaintiff describes herself as "very busy (December 2003)," "doing lots of laundry (August 2002)," and picking blackberries and blue berries (July 2002). *Id.* She reported doing yard work, playing board games, watching movies, and making crafts (December 2001). Plaintiff told care givers that she drove for pleasure to theme parks (July 2004), to the beach (July 2004), and to visit out-of-state friends (September 2003) and relatives (November 2002).

The ALJ noted that plaintiff has given inconsistent reports of her history of head trauma to medical care providers. Tr. 28. She has alleged and denied that she was knocked unconscious in a motor vehicle accident at the age of 17. Tr. 642, 829. The ALJ found plaintiff's assertion that she was rendered unconscious in a June 1999 motor vehicle accident, but was able to drive her vehicle out of oncoming traffic, irreconcilable. However, plaintiff's statements were that she may have briefly lost consciousness, and these statements do not lack credibility.

The ALJ found that plaintiff's academic activities are inconsistent with the cognitive limitations she claims. Plaintiff reported to care givers that her cognitive abilities declined following the blow to her head with a baseball bat when she was eleven years old. Tr. 642. She completed an Associate's Degree in 1993, and later completed job training to provide care to mentally and developmentally challenged patients. Tr. 28, 527, 569-70. She performed skilled jobs as a director and aide until early 2000. She volunteered as an advocate through February 2003. Tr. 648.

The ALJ included the diagnosis of fibromyalgia or chronic pain syndrome at Step Two, but stated that "there was little, if any, credible medical evidence or opinion to support these diagnosis [sic]." Tr. 25. Drs. McNabb, Deodhar, Heffez, and Gallant diagnosed fibromyalgia. Tr. 231-32, 236, 271, 754. Contrary to the ALJ's assertion that plaintiff has never seen a rheumatologist, Dr. Deodhar, an assistant professor of medicine in the Arthritis and Rheumatic Disease Division of OHSU, diagnosed fibromyalgia in June 2000. Tr. 230-33. The only doctor who did not diagnose fibromyalgia was examining physician, K. Claire Anderson, M.D. Tr. 607-10. Dr. Anderson could not diagnose fibromyalgia because of "the positive response to pain in every area of the body that was examined, including all the fibromyalgia control areas. Although

this is not my area of specialty, I would suspect that there is some type of somatoform disorder or conversion disorder." Tr. 609.

The ALJ stated that, regarding plaintiff's allegation of cognitive impairment, there was not persuasive medical evidence to support a functional limitation. Tr. 25-26. However, Julie E. Redner, Ph.D., conducted a neuropsychological evaluation in December 2001 in which she administered a number of tests, and concluded that plaintiff had a Cognitive Disorder, NOS, consistent with possible right hemisphere dysfunction suggested by December 2000 EEG findings showing right mid and posterior temporal sharp activity. Tr. 283. Fine motor dexterity and eye-hand coordination were mildly impaired on the right, and mildly to moderately impaired on the left. Tr. 281. New learning and memory for visual information were impaired, and logical visual sequencing and complex novel problem solving were in the mildly impaired range. Tr. 282.

The ALJ found that there was no objective evidence to support plaintiff's assertions of neck pain, citing July 2003 examining physician K. Claire Anderson, M.D. Tr. 27. However, Dan S. Heffez, M.D., reported in July 2001 that he had reviewed an MRI which revealed a mild cord compression at C6-7. Tr. 273. Dr. Heffez found this consistent with plaintiff's complaints that, when she looked up, she experienced severe pain in the neck, dizziness, difficulty of balance, and weakening in her legs. *Id.* A cervical myelogram in December 2001 revealed significant spinal stenosis at C6-7 on hyperextension views, and mild central spinal stenosis of C5-6. Tr. 338.

The ALJ stated that there was no evidence that plaintiff had diabetes. Tr. 25. However, Dr. Graham diagnosed diabetes in January 2002. Tr. 302.

The ALJ stated that there was no objective evidence of a seizure disorder. Tr. 25. But a December 2000 EEG was abnormal because of "apparent epileptiform activity." Tr. 697. Richard A. Lafrance, M.D., a neurologist, treated plaintiff between September 2000 and December 2001. He diagnosed posttraumatic headache disorder, posttraumatic cognitive disorder, fibromyalgia, and partial simple seizure disorder, posttraumatic in origin. Tr. 286.

The ALJ found the plaintiff, and several of her doctors, not fully credible because of plaintiff's "clear focus of reporting pain to obtain narcotics." Tr. 31. The ALJ does not point to any evidence to support this assertion. Dr. Graham noted in July 2000 that she did not feel that plaintiff abused narcotics. Tr. 318. Plaintiff did receive medical marijuana. Tr. 306, 720. Plaintiff saw John I. Gotchall, M.D., a pulmonary physician, for a chronic cough. Dr. Gotchall noted that he declined to prescribe narcotics for plaintiff's fibromyalgia. Tr. 629.

There is no clear evidence of malingering. The ALJ's determination that plaintiff was not entirely credible as to the intensity, duration, and limiting effects of her symptoms is not clear and convincing and not based on substantial evidence.

II. Opinion of the Treating Physicians

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari*, 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202, citing *Reddick v. Chater*, 157 F3d 715, 725 (9th Cir 1998). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating

source medical opinions are still entitled to deference and must be weighted using all the factors

provided in 20 CFR 404.1527. *Id.* citing SSR 96-2p. An ALJ may rely on the medical opinion

of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides

"specific and legitimate" reasons supported by substantial evidence in the record.

Connie B. Graham, M.D., began treating plaintiff in May 1997. In May 2000, Dr.

Graham noted that plaintiff was interested in filing for disability due to ongoing and worsening

fibromyalgia, and stated "I do not feel comfortable making this difficult decision, thus will refer

to the specialist...." Tr. 319. In July 2002, Dr. Graham wrote in her treatment record:

> Complicated medical history including fibromyalgia, chronic
> fatigue syndrome, chronic cephalalgia, both migraine and tension
> headaches, mild cognitive dysfunction, NOS, partial simple
> seizure disorder, diabetes, hyperlipidemia. Currently not
> sleeping well. It is my opinion that the patient is disabled due
> to the above medical conditions. I do not feel she is able to
> meet the demands of employment, both mentally and physically.
> It would be hard for the patient to be a reliable and dependable
> worker given her above conditions.

Tr. 445. Dr. Graham reiterated her opinion in a letter to the Social Security Administration in

September 2002. Tr. 437.

David Cutsforth, M.D., began treating plaintiff in September 2002. In February 2003, Dr.

Cutsworth wrote in a letter to counsel:

> It is my opinion as a physician who has recently been involved
> with [plaintiff] that she has previously documented chronic pain
> disorder from mixed headache problems and fibromyalgia, which
> has resulted in a significant chronic fatigue situation and pain
> disorder that causes her to be designated as totally disabled.

Tr. 476. Dr. Cutsworth opined that plaintiff's symptoms would increase in a competitive work

environment. Tr. 481.

11 - OPINION AND ORDER

Plaintiff began treating with James D. Gallant, M.D., in May 2003. Dr. Gallant's medical records are not in the court's record. However, in June 2004 Dr. Gallant wrote that plaintiff had fibromyalgia, consistent with 22/22 trigger points, seizure disorder, immune deficiency with fatigue and frequent lower respiratory infections, cervical spinal stenosis, and a cognitive disorder secondary to multiple cranial concussions. Tr. 754. Dr. Gallant stated that:

> The patient's activities are significantly limited. Her activities of daily living may take two to three times the normal non-impaired patient. I believe that her prognosis is quite guarded and I do not expect her to be able to maintain any sustained employment. I believe that she has been chronically disabled for more than 12 months and will continue to be disabled for more than 12 months from now. When one combines the cognitive impairment from cranial concussion, as well as the cervical spinal stenosis, the chronic fatigue immune deficiency state, the chronic fibromyalgia, and the associated emotional trauma from abuse and long-term illness, it would be quite unusual for any individual in this situation to successfully find employment. And, if found, able to sustain it.
>
> Therefore, I fully support [plaintiff's] application for total and permanent disability and have included the impairment questionnaire for further details.

Tr. 755.

The ALJ rejected all three doctors' opinions because they relied upon plaintiff's subjective complaints and were contrary to the medical evidence. Tr. 30-31. However, as pointed out above, the ALJ factually erred in rejecting objective medical evidence of fibromyalgia, cervical spine stenosis, and cognitive impairment.

The Commissioner argues that the ALJ properly relied on the opinion of treating neurologist Sydney Piercy, M.D., "who reached the conclusion that Plaintiff's cognitive and pain complaints were inexplicable, and who was fired by Plaintiff after refusing her request for

12 - OPINION AND ORDER

narcotics (Tr. 27, 624-706)." Defendant's Brief, p. 8. Counsel's citation to 82 pages of the record is not particularly helpful.

In fact, Dr. Piercy first saw plaintiff in January 2003, to consult regarding her headaches. Tr. 656. According to the record, he saw her twice in February 2003, and once in June 2003. Tr. 635, 641, 633. The court finds no evidence to support the assertions made by the ALJ and the Commissioner that Dr. Piercy found plaintiff's complaints inexplicable or that he was fired after refusing to provide narcotics. The record does not reveal Dr. Piercy's opinion as to whether plaintiff was physically or emotionally capable of sustaining employment.

The treating physicians' opinions are adequately supported by objective evidence and not contradicted by substantial evidence.

III. Remand For Payment of Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

/ / /

13 - OPINION AND ORDER

(l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178 n.2.

The court has determined that the ALJ improperly rejected Drs. Graham, Cutsforth, and Gallant's testimony as to plaintiff's ability to sustain work. If credited, their testimony establishes that plaintiff cannot work on a regular and sustained full-time basis and, therefore, she is disabled. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b) (RFC is ability to work on "regular and continuing basis"). *See also* SSR 96-8p ("regular and continuing basis" is "8 hours a day, for 5 days a week, or an equivalent work schedule"). The court, therefore concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r,* 223 F.3d 968 (9th Cir. 2000). *See also Reddick v. Chater,* 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits."

/ / /

/ / /

/ / /

/ / /

/ / /

14 - OPINION AND ORDER

CONCLUSION

Accordingly, the court remands this matter for the purpose of permitting the

Commissioner to calculate and to award benefits to plaintiff as of October 26, 2002, the

disability date onset date asserted by plaintiff.

IT IS SO ORDERED.

Dated this __11__ day of June 2008.


_____
Ann Aiken
United States District Judge


15 - OPINION AND ORDER